## Case No. 7,455.

JONES et al. v. BRITTAN et al.

[1 Woods, 667.] [1]

Circuit Court, S. D. Mississippi. May Term, 1872.

Wiley P. Harris and James Yerger, for complainants.

John D. Freeman, for defendants.

WOODS, Circuit Judge. The bill is in the nature of a creditor's bill. It avers, in substance, that complainant Jones, on December 17, 1866, recovered a judgment against the firm of Coleman, Brittan & Withers, in which the defendant Brittan was a partner, for $11,883.25, in the First district court for Hinds county, Mississippi. That the firm of John Watt & Co., of which complainant, Michael Musson, is surviving partner, recovered a judgment against the same firm of Coleman, Brittan & Co. on the law side of this court, on the 9th day of May, 1867, for the sum of $7,200. That executions were taken out on these judgments and were returned nulla bona, and that the judgments remained unsatisfied. That, notwithstanding the return on the executions, William J. Brittan was, at the rendition of the judgments and still is, seized and possessed of a valuable plantation in Issaquena county, which is subject to the lien of the judgments, and ought to be subjected to the payment of the same. That the firm of Coleman, Brittan &

[1] [Reported by Hon. William B. Woods. Circuit Judge, and here reprinted by permission.]

Co., at the date of the judgments, and for a considerable time prior thereto, was insolvent, and the defendant, William J. Brittan, being a member of the firm and knowing its insolvent condition, for the purpose of preventing the application of his individual property to the payment of the debts of the firm, procured a suit to be instituted against himself by his wife, the defendant Fannie A. Brittan, in the chancery court of Hinds county, in which she claimed that her husband was indebted to her in the sum of $20,625.86, for cotton, which she claimed was grown on her plantation between September 8, 1860, and April 4, 1861, and was shipped to the firm of Coleman, Brittan & Co., and by them sold, and that the same never was accounted for to her by her husband William J. Brittan. That the bill in the chancery court of Hinds county, and the answer of Wm. J. Brittan were filed on the same day, to-wit, on May 14, 1866, and the answer which admitted all the allegations of the bill was sworn to two days before it and the bill were filed. That on the 6th of June following, a decree was rendered as prayed in the bill against Wm. J. Brittan, for $27,023.81, on which execution was allowed to issue. That this proceeding was instituted solely upon the instigation and procurement of Wm. J. Brittan, and was not instituted by his wife, Fannie A. That the solicitor who drew the bill drew the answer, and was employed solely by Wm. J. Brittan, and not by his wife. That Brittan did not reside at the time of said suit in Hinds county, Mississippi, but in New Orleans, and that his object in having said suit brought in said county and remote from the city of New Orleans, where his creditors mainly resided, was to avoid scrutiny. That said proceedings were for the purpose of hindering, delaying and defrauding the complainants, and giving Fannie A. Brittan an unfair and inequitable advantage. That the alleged debt, upon which said decree was founded, was invalid and fraudulent, and the decree was procured by collusion between the said parties to the same. That said Wm. J. Brittan caused an execution to be issued on the same and levied on his plantation, in the county of Issaquena, containing 1,200 acres, and the same was sold by the sheriff and conveyed to his wife, Fannie A. Brittan. That since the rendition of the judgments above mentioned, Wm. J. Brittan has been adjudicated a bankrupt, but has not surrendered the lands so sold to Fannie A. Brittan, as part of his assets. Complainants claim their judgments to be liens on said lands, and pray that they may be declared assets of said bankrupt, and the judgments of complainants a lien thereon, and that the same may be sold and the proceeds applied to the payment of complainants' judgments, and the residue, if any, distributed according to justice and equity. Wm. J. Brittan and Fannie A. Brittan have filed separate answers under oath, in which

they deny seriatim all charges of fraud, fraudulent practices or collusion, and deny the invalidity or fraudulent character of the claim on which the decree in favor of said Fannie A. Brittan was based, and aver the entire bona fides of the proceedings in chancery and the validity and honesty of the debt on which they were founded, and the solvency of Coleman, Brittan & Co. The answers are responsive to all the material allegations of the bill, and put the complainants upon proof thereof. To these answers the complainants have filed no replication. The defendants would therefore strictly be entitled to have the bill dismissed as a matter of course. See equity rule No. 66. But as both parties have proceeded to the taking of testimony as if the general replication had been filed, and no motion has been made to dismiss the bill for want of replication, it may be considered as filed, and the case considered on its merits, or a replication may be filed instanter.

After looking into the evidence, I am satisfied that the complainants have failed to make good their bill by their proof. The complainants have offered as testimony: (1) The records of their judgments against Coleman, Brittan & Co. (2) The record in the case of Fannie A. Brittan v. Wm. J. Brittan [unreported]. in the chancery court of Hinds county. (3) The record of the proceedings in bankruptcy in Re Wm. J. Brittan [unreported], showing that he did not surrender said plantation as one of his assets, and there rested their case. This proof utterly fails to establish the charges of fraud and fraudulent practices and collusion made in the bill. In fact it does not tend to establish the charges of the bill. Fraud is never presumed. It must be affirmatively shown. If upon this proof we are asked to decree for complainants, we must presume that the decree in favor of Fannie A. Brittan v. Wm. J. Brittan was fraudulent and therefore void and without any proof save the mere record itself. The record does not establish the fraud. Unless, therefore, the defendants have supplied by their testimony the want of proof on the part of complainants, the case must fail. As the answers of defendants are under oath, they are, so far as responsive to the bill, evidence in the case, and to entitle the complainants to a decree, must be overcome by the oaths of at least two witnesses, or one witness and strong corroborating circumstances.

We have seen that the evidence introduced by the complainant does not, standing alone, tend to overcome the answers of defendants. The testimony of defendants so far from proving the case made in the bill tends to support the answers. It appears from the testimony that the plantation which is sought to be subjected to the payment of the complainants' judgments. was bought by Wm. J. Brittan in the year 1852, and paid for out of the proceeds of his wife's separate estate, and the deed inadvertently made to Wm. J. Brittan, without the knowledge or consent of his wife. In the year 1860, there was produced on another plantation, the separate property of Mrs. Brittan and by the labor of her own slaves. a crop of 540 bales of cotton which was during the winter and spring of 1861 shipped to the firm of Coleman, Brittan & Co., in New Orleans and by them sold from time to time, the last sale being made on April 4, 1861, and the aggregate amount of the sales being $20,628.86. The law of the state provides (Rev. Code Miss. 1857, p. 336, art. 24), that "the rents, issues, profits, products and income of either real and personal estate, or both, owned by any married woman at the time of her marriage or which may have accrued to her afterwards shall also enure to the wife as her separate property, and shall not be liable to be taken in satisfaction of the debts of her husband." So that the proceeds of the 540 bales of cotton was the property of Mrs. Brittan, and she had a claim on her husband therefor if he appropriated the same, unless she lost her right thereto by her own act or neglect. Id. p. 237. art. 28, provides, that "neither the husband nor his representatives shall be liable to account to the wife for the rents, profits or income arising from the separate property of the wife after the expiration of one year from the time of receiving the same." The evidence shows that the proceeds of the 560 bales of cotton were passed to the credit of Wm. J. Brittan on the books of Brittan, Coleman & Co., but precisely when this was done does not appear, but there is no proof that it was done prior to July 1, 1861. Within one year from the time of such appropriation Mrs. Brittan might claim said proceeds from her husband. It is claimed by complainants that as Mrs. Brittan did not assert her right to the proceeds of the cotton as against her husband until the 16th of May, 1866, she lost her right thereto, and her husband ceased to be liable to her on account thereof.

The facts in the case were fairly submitted to the chancery court of Hinds county. in the case of Fannie A. Brittan v. Wm. J. Brittan, and upon the facts the court decreed in favor of Mrs. Brittan. This is conclusive unless it is shown that by fraud and collusion between the parties the court was misled as to the true state of facts, and rendered a decree which it would not otherwise have made. No attempt is made to prove any such fraudulent practice. That court was possessed of the facts in the case just as they appear to the court here, and upon the facts it made its decree. There was no fraud, concealment or misrepresentation, and the decree of that court must stand. It is not enough to show that the court erred. The decree cannot be attacked in this collateral proceeding unless for fraud. But did the court err? Although we are not advised by the pleading or proof of the pre-

cise date when Brittan appropriated the proceeds of his wife's cotton by a credit therefor on the books of the firm, I cannot by the proof fix the date prior to the 1st of July, 1861. On the 5th of August, 1861, the courts of Mississippi were by the act of the legislature closed against the prosecution of such claims. Up to that date, four months and one day of the one year's limitation had elapsed, and it is not averred or shown that before the commencement of her suit in equity against her husband by Mrs. Brittan, the courts of the state had been open long enough to complete the bar of one year. The period during which the courts are closed is not to be counted in estimating the time when the bar of the statute intervenes. Hunger v. Abbott. 6 Wall. [73 U. S.] 532. So even if we were authorized, which we are not, to take note in this collateral proceeding of any error into which the chancery court of Hinds county may have fallen, it is not made to appear that the court fell into any error. The decree of that court was based upon what had once been a valid and just claim in favor of Mrs. Brittan against her husband, and the court, with all the facts before it, decided that the claim was still a valid and subsisting one. Its decree is, therefore, binding upon all persons until reversed in a direct proceeding, and cannot be here collaterally impeached except for fraud, and no fraud is shown. But even if the decree of the chancery court of Hinds county, and the proceedings and sale under it were void, the record in this case discloses an insuperable obstacle to the decree asked for by complainants.

It appears in the evidence that, on the 1st of November, 1865, William J. and Fannie A. Brittan, by a deed absolute on its face, and for a sufficient and valuable consideration, conveyed the plantation in controversy to Mrs. M. L. Johnson, the mother of Mrs. Brittan. The answer of William J. Brittan contains an expression which would indicate that this deed, though purporting to be absolute, was intended as a mortgage. In his deposition, however, Brittan says that the conveyance was not intended as a mere security, but as payment of a debt due by him to Mrs. Johnson; but, from the uniform kindness of Mrs. Johnson to her children, witness and his wife inferred a willingness on her part to accept of the money due at any time before she otherwise disposed of the plantation. Mrs. Johnson, the grantee, testifies that the conveyance to her "was intended as an absolute deed without the privilege of redemption." The deed being absolute on its face, unless the grantee understood and agreed that it should be a security for the debt, it must be held to be an absolute deed. It is clear that it was not so understood by both parties. Mrs. Johnson has then the legal title to the plantation in question, and the proof shows she is in possession. She is, therefore, a necessary party

to the bill of complaint in this case. These facts were all brought out before the trial of the case in the court below. The complainants have neglected to make Mrs. Johnson a party. The objection was taken upon the hearing in this court. The rule upon this subject is as follows: If, after objection is made for want of necessary parties, the plaintiff neglects or refuses to bring them before the court, the bill will be dismissed. Singleton v. Gayle. 8 Port. (Ala.) 270; Bailey v. Myrick, 36 Me. 50, 54; Huston v. McClarty, 3 Litt. (Ky.) 274; Royse v. Tarrant, 6 J. J. Marsh. 567; Van Epps v. Van Deusen. 4 Paige. 64. So I am of opinion that the bill should be dismissed, at complainants' costs, (1) because the averments of the bill are not sustained by the proof; and (2) because the necessary parties are not before the court. Decree accordingly.