## Case No. 4,812.

### FISCHER v. WILSON et al.

[16 Blatchf. 220; 4 Ban. & A. 228; 16 O. G. 455.] [1]

Circuit Court, S. D. New York. April 28, 1879.

Charles F. Blake, for plaintiff.
Charles B. Stoughton, for defendants.

BLATCHFORD, Circuit Judge. This suit is brought on letters patent No. 74,068, granted to the plaintiff, February 4th, 1868, for an "improvement in machine for forming sheet metal mouldings." The bill was originally filed against the defendant Wilson alone, on the 19th of May, 1869. He put in an answer and a replication was filed to that answer. Proofs on the part of the plaintiff were taken in February, 1871. Nothing further was done till November, 1873, when the plaintiff closed his opening proofs. The defendant took some proofs in November, 1873. At the April term, 1874, a decree was entered for the plaintiff, by default. On the 13th of May, 1874, a written stipulation, en-

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge; reprinted in 4 Ban. & A. 228; and here republished by permission.]

titled on the original suit, was signed by the solicitors of the respective parties, stipulating that said decree "shall be vacated and the taking of proofs herein be opened;" "that the testimony herein, and in this case as amended by the insertion of Gunther K. Ackerman and John Borkel as defendants, together with said Wilson, shall close by the first day of August, 1874, and that said cause shall be brought to hearing before either judge of this court, and at any place, thereafter, as counsel for complainant shall elect;" "that the bill of complaint herein may be amended by making Gunther K. Ackerman and John Borkel, both of the city of New York, co-defendants with said Henry Wilson, against whom the bill was originally filed;" "that, if said cause, as amended by the insertion of above new defendants, shall not be heard before the October term of this court, and if the defendants shall not answer ready at said term, a decree may be entered in said cause against the defendants herein, those made defendants by amendment, as well as against said Wilson, the original defendant, and that there will be

[Drawings of Patent No. 74,068, published from the records of the United States Patent Office.]

no motion made by defendants to vacate the decree by default, but that an accounting and injunction may be obtained by complainant, without opposition by defendants, the accounting against said Ackerman and Borkel dating from the time of the purchase by them of the business of said Wilson, in which the infringing machine or machines were used;" "that no advantage shall be taken, or exceptions made, from the fact that said Ackerman and Borkel were not joint infringers, and that the bill has been amended, making them defendants;" and "that, if at any time after due notice from the defendants of the taking of testimony, the complainant cannot attend for said testimony, or will not consent that defendants go on, then the time for closing proofs shall be extended as many days as the notice covered, or as the defendants may be delayed." An amended bill was thereupon filed, making Wilson, Ackerman and Borkel defendants, and containing all proper averments for a complete bill. It was filed in pursuance of a written consent, entitled in the original suit, and signed by the solicitor for the defendant therein, consenting that it be filed in place of the original bill, without costs, and it was annexed to such consent. A joint answer by the three defendants, to the amended bill, was filed in May, 1875. It was signed by the same solicitor who was solicitor for the defendant in the original suit. No replication to the same was filed. The defendants took proofs in June and July, 1875, and in February, 1876. The plaintiff took rebutting proofs in April, July and October, 1876.

The specification states the invention to be "a new and improved machine for forming sheet metal mouldings." It says: "This invention relates to a new machine for pressing mouldings for cornices, &c., from galvanized or other sheet metal, and consists in so arranging the machine, that but two kinds of dies for all kinds of smooth mouldings that may have to be formed are needed, viz., rounded and square dies. Of the latter, but one set is required for making all sorts of angles, while, of the rounded dies, as many sets must be provided as there are different sized curves to be represented in the mouldings. The dies are easily removed and replaced. The male die is arranged stationary, while the female die is secured to a slide or other reciprocating device. The male or stationary die is underneath the female or movable die, for the purpose of preventing the latter from being clogged or made imperfect by dirt or other foreign matter. The standard of the male die is made concave on one side, to allow the forming of three sides of a square by the apparatus." It further states that the invention consists, also, in the construction and arrangement of the device for moving the upper die. This is not important in the present case. The specification further says: "D is a standard for the lower stationary die. It is, by means of screws or otherwise, firmly secured upon the bar B, and is made in the form of the letter C, that is, concave on one side, as shown in fig. 2. The lower die E, which is a strip as long as the distance between the uprights A, is fitted upon the upper edge of the standard D, so as to firmly remain thereon. This die is conical in cross-section, forming a right angle at the apex, and may be formed on (not fastened upon) the standard D, as part of the same, as it need never be removed. When rounded dies, F, are used, they are laid upon this die E, (as in fig. 3,) they being recessed on their under side for the purpose of fitting the die E. The upper die, G, which is of the same length as the lower die, and which is provided with a concave under side that corresponds to the shape of the lower die, (as in figs. 2 and 3,) is provided, at its upper surface, with two or more projecting pins, a a, which are perforated, and which serve as a means for fastening the die to a pendent bar, H, of nearly the same length as the die." Mechanism is described, by which the bar H is moved down and up, and whereby the upper die is "pressed upon the lower die and raised from the same, as may be desired." The specification adds: "The most difficult mouldings can be formed by this machine, as is indicated by red lines in figs. 2 and 3, the standard D being provided with a concave side, to facilitate the forming of such difficult mouldings, as is seen in fig. 2. The dies can be made of steel or other suitable material, and of suitable thickness." There are seven claims. Only claims 2 and 4 are alleged, in this suit, to have been infringed. Those claims are in these words: "2. The standard D, when provided with one concave side, as shown. 4. Arranging the female die G, above the male die, E or F, for the purpose of keeping the female die clear, as set forth."

The plaintiff's expert, Mr. McIntire, in his testimony given February 7th, 1871, describes a machine for bending sheet metal to form metallic cornices, which was a working machine, and which he had seen in operation at the establishment of Ackerman & Borkel, in Worth street, New York. He says: "Q. 3. Will you look at the model, complainant's Exhibit B, and state what it represents? A. I have examined the model marked complainant's Exhibit B. It represents a machine adapted to bending sheet metal to form metallic cornices. Q. 4. Have you ever seen a machine in operation constructed like said model; and, if yea, when and where and by whom? A. I have seen a working machine in operation at the establishment of Messrs. Ackerman & Borkel, No. —— Worth street, New York city, which was constructed and operated similarly to said model, complainant's Exhibit B. Q. 5. Please look at complainant's Exhibit C, and state what it represents? A. It represents a true, full-sized model of a short section of a bar of solid met-

al, which I saw used in, and as part of, the working machine which I have before stated I saw in operation at No. ——— Worth street." He then goes on to describe the construction and operation of the working machine he so saw in operation. A longitudinal round bar or rod of metal was secured in a ⋏ shaped longitudinal groove formed at the lower edge of a carriage which reciprocated up and down, and which groove had its apex uppermost. The bar of solid metal, before mentioned, had, in its upper face, a longitudinal concavity. It was secured, with such concavity uppermost, on a table, and the sheet of metal to be moulded was placed immediately over such concavity, and beneath the round rod above. The latter was then moved downward, and forced the sheet of metal into such concavity, the concavity acting as the lower die, and as a female die, and the round rod acting as the upper die, and as a male die. Thus half-rounds were formed in the sheet of metal. In the above operation, it is not alleged there was any infringement of either the 2d claim or the 4th claim of the Fischer patent. After the above operation was performed, the round rod was removed from the lower edge of the reciprocating carriage, and the bar with the concavity, which had before served as the female die, was mounted edgewise, and secured in the platform, so as to present uppermost an edge instead of a concavity, and to make such edge a male die, and the ⋏ shaped groove in the lower edge of the reciprocating carriage, from which the round rod had been removed, became the female die. The sheet of metal, with the half-rounds so formed in it, was placed over such male die, and the carriage descended, so that the ⋏ groove moulded the sheet over the male die, and made angular bends in it. In such position the concavity in the lower bar, being at the side, accommodated the half-round bends previously made in the sheet. When so used to make angular bends, the machine embodied the inventions covered by the 2d claim and by the 4th claim of the plaintiff's patent, containing the same arrangement of the female die over the male die that is covered by the 4th claim, and the concave side of the male die being a substantial equivalent for the standard with one concave side, covered by the 2d claim. The foregoing testimony of Mr. McIntire was given before Ackerman and Borkel were made defendants. In November, 1873, it was admitted on the record, by the counsel for the defendant, (Wilson then being the only defendant,) "that the machine mentioned by the witness McIntire, in answer to question 4, had been used by the defendant since the date of the patent upon which this suit was brought, and before the commencement of this suit." After Ackerman and Borkel were made defendants, the plaintiff put in no direct testimony to show that they had ever used the infringing machine.

The defendants now contend, that there can be no decree against Ackerman and Borkel, because, (1) no replication has been filed to their answer; (2) because the use proved is a use by Wilson alone, and not a use by Ackerman and Borkel, or either of them. It is contended, that the evidence taken before Ackerman and Borkel were made defendants cannot be read against them, and that the patent is not, in fact, in evidence against them.

As to the replication, the putting in of proofs by the defendants to sustain the allegations of their joint answer, after such answer was filed, and their allowing the plaintiffs to put in proofs in rebuttal, and proofs in contradiction of the allegations of such joint answer, without entering any objection on the record that there was no replication to such joint answer, estops the defendants from now raising such objection.

As to the other objection, the reference in the stipulation of May 13th, 1874, signed by the solicitor on behalf of Ackerman and Borkel as well as on behalf of Wilson, (and under which Ackerman and Borkel put in their answer,) to the fact that they had bought "the business of said Wilson in which the infringing machine or machines were used," and that the accounting against them was to date from the time of such purchase, and that they were to be enjoined, and that they were not to object that they had not infringed jointly with Wilson, taken in connection with the fact, that, in the joint answer, which is sworn to by Borkel, the machine charged in the bill as infringing is spoken of as "the machine used by these defendants," is sufficient prima facie evidence of the use of the machine by Ackerman and Borkel.

The defendants claim to have shown that the machine used by Wilson, and sold by him to Ackerman and Borkel, embodied the 2d and 4th claims of the plaintiff's patent, before the plaintiff made the inventions. But, the whole evidence of the witness Conolly, taken together, shows that such machine did not embody either of those claims until after the plaintiff completed, and put into the shape of a model, the inventions covered by those claims.

The plaintiff's lower or male die, whether E, forming a right angle at the apex, or F, a rounded die on the upper surface, is of such a form that it cannot be "clogged or made imperfect by dirt or other foreign matter." This being so, it is apparent, that, if the female die is placed above the male die, so that the female die cannot be "clogged or made imperfect by dirt or other foreign matter," the resulting smooth sheet metal mouldings will not have their surface marred by the interposition of dirt or foreign matter between the dies. Mr. McIntire, the plaintiff's expert, testifies, that the state of the art, prior to the plaintiff's invention, was, that, so far as he knows, all machines had been made with the dies so arranged that opportunity was afforded for the collection of dirt, chips, &c., in or

about the lower die; that the consequence was more or less injury to the dies, and imperfection in the work produced; that the plaintiff, in fact, arranged the female die, as shown and described, over a male die which had no concavities or surrounding hollows in which any "dirt or other foreign matter" could collect; and that, merely placing the female die over the male die would not effect the objects of the invention, unless the male die were so made and arranged as to afford no chance for the collection of dirt that would destroy the perfection of the work. This testimony is not contradicted. In view of it, and of the fact that the 4th claim claims "arranging the female die, G, above the male die, E or F, for the purpose of keeping the female die clear, as set forth," and, as the object of the invention would not be attained by putting the female die above, and thus keeping it clear, if the male die were one so arranged as to retain dirt or foreign matter in or about it, the proper construction of the claim is, that it claims the described arrangement of the two dies, so that, having such a lower male die as E or F is, the female die shall be above the male die, and thus be kept clear, resulting in keeping both dies clear, instead of having the female die below in a position to be clogged and mar the work, even though the upper male die should clear itself. In this view, nothing is shown that affects the novelty of the 4th claim. In the J. S. Beach patent, though the female die is above, dirt can collect in the working parts of the lower die. The plaintiff's 4th claim is not anticipated by the Seely patent, or by either of the Lamplugh patents, or by the Worthen and Renwick patent, or by the Johnson patent, or by anything else put in evidence. Nor is the novelty of the plaintiff's 2d claim affected by any of the above patents, or by any other evidence.

There must be the usual decree for the plaintiff.