## *In re* THOMAS.

### BLYTHE *v.* THOMAS.

*(District Court, D. South Carolina. April 11, 1891.)*

1. LIMITATIONS—TRUSTS—WHEN STATUTE BEGINS TO RUN.
   Where a bankrupt, 10 months before adjudication, had assigned a note to a trustee for the purpose of protecting his brother from liability as his surety, the trustee holds the note as collateral, and the statute of limitations cannot begin to run in his favor until the liability secured has been satisfied, and the other persons interested in the fund have had notice of the fact.

2. BANKRUPTCY—FRAUDULENT CONVEYANCES.

In 1865 the bankrupt, long before the adjudication, executed a deed wholly in his own handwriting reciting the fact that he had received from his mother-in-law $400 in cash and one female slave, which he had sold for $6,000, (presumably in Confederate money;) that he had invested the proceeds in certain securities, naming and describing them, which he held in trust for his wife and children. The deed was not witnessed, although there was a space for a witness' signature on the blank. An indorsement thereon, also in his handwriting, and without date, recited that, having occasion to use some of such securities for his own purposes, he had appropriated them, and replaced them with the note in controversy. It further appeared that the alleged trust was secret; that the bankrupt had dealt with the subject-matter of the original deed as if it were his own property; and, after substituting for it the note in question, he had transferred the latter to a trustee, to protect his brother from liability. *Held*, that the trust so attempted to be created was null and void as against creditors.

3. SAME—LEGAL SERVICES BY BANKRUPT TO THE ESTATE.

A bankrupt is under no obligation to render services as an attorney in proceedings to realize his estate, and, if he does so, he is entitled to the payment of a fair compensation therefor out of the funds so secured.

4. REFERENCE—ABSENCE OF ONE PARTY—REPORT.

Where an order of reference is made on motion of one party in the absence of another, although after notice, and the language used carefully excludes any determination of the issues by the referee, the effect of his report will be merely advisory, and the court will consider the cause as presented on the pleadings and proof without reference to the report except so far as it contains the testimony.

5. SETTING ASIDE DEED—ASSIGNEE IN BANKRUPTCY.

An assignee in bankruptcy cannot impeach a deed made by the bankrupt for the benefit of his wife and children more than six months before the adjudication, if the deed be voidable for constructive fraud only; but if actual fraud be charged it can be impeached by the assignee.

In Bankruptcy.

*Wm. E. Earle* and *Mitchell & Smith,* for assignee.

*I. P. K. Bryan,* for defendant.

SIMONTON, J. The record and testimony in this case are voluminous, and so much only will be referred to as may be necessary to understand the questions involved in it. William M. Thomas was adjudicated a bankrupt on his own petition on 3d February, 1871, and has not yet been discharged. A. Blythe was appointed his assignee in February, 1871, and qualified as such 31st August, 1871. This case comes up in this way: William M. Thomas was the owner and holder of a sealed note of Mary Raymond, dated 25th August, 1863, for $7,000, secured by a mortgage of a lot of land in Greenville, S. C. He began proceedings for foreclosure of the mortgage in the court of equity for Greenville district, and obtained his decree 22d January, 1868. The cause was stubbornly contested. During its progress Mary Raymond died intestate, and the proceedings were revived and continued against her only child and heir, H. H. Raymond, finally resulting in a sale of the property, application of the proceeds to the debt, and a balance unpaid of $3,421.04. The creditors of Mary Raymond then joined in a suit in Charleston county against her estate, under the name of *Warren* v. *Raymond,* to which suit W. M. Thomas was a party, and acted as his own attorney. The result of this suit was that this claim was established in the sum of $————. During the contest between Thomas and the Raymonds in Greenville, the court of common pleas,—the successor of the court of equity,—passed an order, stating the bankruptcy of Thomas, and allowing his assignee

v.45F.no.11—50

to continue the action in his own name. The date of this order was 28th July, 1871. The assignee, however, did not interfere until 29th April, 1876, when he filed in the clerk's office for Charleston county, to which a transcript of judgment had been sent in *Thomas* v. *Raymond* from Greenville county, a formal notice that he claimed the judgment as a part of the bankrupt estate. In the case of *Warren* v. *Raymond*, on the motion of some of the creditors contesting the Thomas claim, the assignee was made a party, and Peter Thomas, Stephen Thomas, Jr., trustee, and the minor children of William M. Thomas. The answers of Peter Thomas and S. Thomas, Jr., are simply protests against the proceeding making them parties, neither stating or denying any claim. The answer of the infants by guardian *ad litem* is the formal answer of an infant. William M. Thomas is the attorney on record for these parties, as well as the guardian *ad litem* of the infants. The assignee claimed the fund. The court in which *Warren* v. *Raymond* was settled did not decide to whom the amount payable on the Thomas judgment belonged. Apparently that court seemed to think that the only controversy was between William M. Thomas, claiming it as his own, and the assignee, claiming it as a part of the bankrupt estate. However this may be, it did not decide to whom it must be paid, but sent the fund into this court, where this question could be determined. *Warren* v. *Raymond*, 19 S. C. 605. The petition or bill before us sets out a history of this Raymond note, and claims that the proceeds are a part of the bankrupt estate to be administered by the assignee. The answer of W. M. Thomas denies that he owned the Raymond note when he went into bankruptcy. That he had, 10 months previous thereto, assigned it to S. Thomas, Jr., trustee, for a valuable consideration; and he avers that neither S. Thomas, Jr., nor his *cestuis que trustent* have ever waived any claim to the note. He brings to the attention of the court the statutes of limitations in sections 5129 and 5057, Rev. St.; charges that the assignee and his counsel, Mr. Earle, both knew of this assignment, and have known of it since 1871; says that there are no unpaid creditors of his estate; claims that in any event he is entitled to counsel fees for securing the fund; and prays that the fund be paid over to S. Thomas, Jr., to be dealt with by him in accordance with his trust. The cause came to a hearing before Judge BRYAN, recently the district judge. He signed an order on motion of Mitchell & Smith for the assignee on proof of notice to defendant, referring the issues arising upon the petition and answer to Mr. Seabrook, register, with instructions to take the testimony to be offered by the parties, and report his conclusions of law and fact upon said issues. Mr. Seabrook has made his report in favor of the petitioner, the assignee, A. Blythe. The defendant has filed very many exceptions to this report, some of them going to the right to grant such an order of reference, and his right to make any report; others to the report on its merits. Just here it is well to settle the force and effect of the order of reference in this case. It does not refer the case to Mr. Seabrook to hear and decide the issues of law or of fact in the case; nor is there anything in the language of the order authorizing the construction that he is to determine any issue. The court could

grant such an order. *Haggett* v. *Welsh*, 1 Sim. 134; *Dowse* v. *Coxe*, 3 Bing. 20; *Prior* v. *Hembrow*, 8 Mees. & W. 873; *Newcomb* v. *Wood*, 97 U. S. 581. But this would require the consent of all the parties, as it would, in effect, withdraw the case, and submit the controversy to a tribunal of their own selection. But the court "cannot, of its own motion, or upon the request of one party only, abdicate its duty to determine by its own judgment the controversy presented, and devolve that duty upon any of its officers." *Kimberly* v. *Arms*, 129 U. S. 525, 9 Sup. Ct. Rep. 355. The learned judge who signed the order of reference in this case evidently had this in mind. He made the order on motion of one party, and in the absence of the other, although after notice. He carefully used language excluding any determination by his referee,—"The special master is instructed to take the testimony, and report his conclusions of law and fact." The information which is communicated by his findings in such a case upon the evidence presented to him is merely advisory to the court, which it may accept and act upon, or disregard in whole or in part, according to its own judgment as to the weight of evidence. *Kimberly* v. *Amrs*, *supra*; quoting and affirming *Basey* v. *Gallagher*, 20 Wall. 670; *Quinby* v. *Conlan*, 104 U. S. 420. The court considers the cause as presented on the pleadings and proof without reference to the report except so far as it contains the testimony. It accords to the findings of the report all the weight due to the careful and well-considered opinion of an able and impartial lawyer, whose qualifications fully justify his selection by the judge. This disposes of all preliminary questions made by the defendant to the validity of the order of reference and to the character of the report thereon. The first exception, because of the want of a replication to the answer, comes too late. *Fischer* v. *Wilson*, 16 Blatchf. 220; *Jones* v. *Brittan*, 1 Woods, 667.

An examination of the pleadings, confining ourselves to them, discloses this: The assignee asserts that the fund in court, arising from a contract made with the bankrupt himself, is a part of the bankrupt estate, to be administered in bankruptcy. He does not follow the usual form and technicality of a bill in equity; but he in effect alludes to and attempts to meet certain defenses which the defendant may set up. In the answer the defendant meets the averment that the fund is the property of the bankrupt estate, and while by implication he admits that at one time the note from which it arose was his property, he denies any ownership at the date of his adjudication, for that 10 months anterior thereto the same had been assigned to S. Thomas, Jr., trustee, for a valuable consideration. He denies that S. Thomas, Jr., or his *cestuis que trustent* had in any way waived their claim to this fund. He then pleads the statute of limitations peculiar to bankruptcy in sections 5057, 5129, Rev. St., and charges actual notice of this assignment to S. Thomas, Jr., upon the part of the assignee and of his attorney, Mr. Earle. He sets up by the way a claim on the fund for his own services as attorney in securing it, and concludes with a prayer that the fund be paid over to S. Thomas, Jr., trustee, to be dealt with by him in accordance with his trust. This, then, is the issue: Was the note of Mary Raymond, the

source of the fund in the registry of this court, assigned to S. Thomas, Jr., trustee, 10 months before the adjudication of defendant as a bankrupt? If so, was the assignment of such a character as to prevent the fund, or any part of it, from ever becoming parcel of the bankrupt estate? On 20th April, 1870, William M. Thomas signed and delivered to S. Thomas, Jr., a paper in these words:

"I hereby assign to Mr. S. Thomas, Jr., a note of $7,000, dated ————, 1863, made by Mrs. Mary Raymond to me, payable six months after peace, or sooner, at my option. This is to secure Peter Thomas in a note made by him to the state of South Carolina, upon which I was security, and the proceeds of which, to-wit, property at the state works in Greenville, South Carolina, was taken by me for the debts of Barksdale, Perry & Co., and which note is now out and unpaid."

The original of this paper has been lost or mislaid. Its loss and its contents were proved to the satisfaction of the register. We assume that the paper was made. The evidence shows that both the assignee and Mr. Earle knew that the legal title to this Raymond note was in S. Thomas, Jr., and that they recognized the fact in December, 1872. There can be no doubt that the legal title was in S. Thomas, and that he held it for the sole purpose of protecting Peter Thomas from all liability upon the note to the state, referred to in the assignment. It was a collateral, and when it had served its purpose its proceeds, or so much thereof as were not needed to protect Peter Thomas, reverted to William M. Thomas, or to such person as represented and controlled his interest therein. So when William M. Thomas made the assignment to S. Thomas he had an interest still remaining in him, and this interest became and was a part of his estate when he went into bankruptcy. Section 5046, Rev. St. The testimony proves beyond all question that this note to the state on which Peter Thomas was liable has been satisfied and discharged by William M. Thomas. Mr. Seabrook so finds, and William M. Thomas himself has under oath repeatedly asserted it; neither Peter Thomas nor S. Thomas, Jr. denying it. Precisely when this satisfaction was made is disputed. William M. Thomas says that it was effected after he was adjudicated a bankrupt. The special master finds that it was done before that time. Whether it occurred before or after that event, all interest of S. Thomas, Jr., in the note was satisfied thereby. If the satisfaction was accomplished by William M. Thomas after his adjudication, and by money of his own, while he would be entitled to reimbursement for such moneys, with proper interest, out of the proceeds of the note, the rest of the proceeds would revert to his assignee, unless the assignee had lost his right through laches. The defendant denies that the fund reverted to the assignee, and sets up the statute of limitations. The position is this: The assignment to S. Thomas, Jr., was made April 20, 1870. Both the assignee and his attorney had notice of it, and recognized it in December, 1872. Yet the assignee made no claim until 20th April, 1876. There is no doubt that S. Thomas, Jr., had a qualified property in the note, and the legal title, and that it remained in him until the purposes of the assignment to him

were fulfilled. If the transfer of the whole note made him trustee for all persons interested in it, then of course the statute could not run in his favor, unless he set up in himself a title adverse to them, and they had notice. Of this there is no evidence whatever. If, however, he held as trustee only, for the special purpose of protecting Peter Thomas, he was entitled to hold until he was satisfied that this purpose was effected, and the statute would run against subsequent claimants upon the fund when they had notice that he had ceased to hold for that purpose, or that he claimed the proceeds of the note in another right. As we have seen, the time when the liability to the state was discharged does not appear. But S. Thomas, Jr., in his testimony before Referee T. M. Hanckel in 1875, declared that he held the note for the protection of Peter Thomas, and that Peter Thomas, during a visit to Charleston a few months before, had stated to him that the Allen note (the note held by the state) was still out and unpaid. In fact, so far as this voluminous mass of testimony discloses, no one but W. M. Thomas knew how or when he had discharged the liability of Peter Thomas and of himself to the state. Mr. Stephen Thomas, Jr., evidently did not, nor Peter Thomas; and, until they did, S. Thomas, Jr., was bound to hold the legal title in the Raymond note, and the fact that he so held it was not adverse to the rights of subsequent claimants, and gave no currency to the statute. If, therefore, we confine ourselves to the issues made in the pleadings, we must conclude that the qualified property of Stephen Thomas, Jr., in the Raymond note and its proceeds has ended with the liability of Peter Thomas, and that the right to these proceeds now vests in the assignee. Rev. St. § 5046.

In the exception of the defendant No. 11 is a statement that this Raymond note had been orally assigned absolutely by W. M. Thomas to Peter Thomas about 1st June, 1870, to extinguish his claim against Perry, Barksdale & Co. The special master reports no finding on this. A careful examination of the evidence satisfies me that no such assignment was made, and that the memory of W. M. Thomas and Peter Thomas, who speak of it, is at fault. The existence of such an assignment is incompatible with the averments of the answer in this case and its prayer. It cannot be reconciled with the answers of W. M. Thomas himself and his evidence in the several cases which are introduced in testimony in this case. It is inconsistent with the instructions given to Perry & Perry, that S. Thomas, Jr., owned the Raymond note, in proof of which the assignment to him was sent to them. If such an absolute assignment to Peter Thomas had been made it would have extinguished the title of S. Thomas, Jr. It was certainly unknown to S. Thomas, Jr., in 1875, and to Peter Thomas, for Mr. S. Thomas, Jr., at that time testified that he held this note to secure and protect Peter Thomas, and that Peter himself had instructed him a few months before to do so, as the Allen note was still out. No man can stand higher than Mr. S. Thomas, Jr. The whole theory upon which W. M. Thomas carried on his case in the Raymond matter was that S. Thomas, Jr., held the note for the protection of Peter Thomas; that Peter had been fully protected,

and that the proceeds of the note belonged either to his children or to himself. Indeed, up to his testimony in the case of Nesbit, guardian in 1876, W. M. Thomas believed that he had so provided in the written assignment to S. Thomas, Jr., and that, his attention having been called to the matter by Gen. De Saussure, "he hunted up his papers, and to his surprise found that there was no such reversionary clause." There was no such consideration for such parol assignment. Peter Thomas had purchased property from the state on credit of a note with W. M. Thomas as security. The latter took the property for Perry, Barksdale & Co., of which firm he was a member. He assumed the debt with Peter's assent, and to protect him he assigned the Raymond note to S. Thomas, Jr. This was ample. But if we suppose that such an assignment was in fact made, it must have been made to protect Peter Thomas from his liability to the state, or it must have been a gift. If the former, it was in effect a pledge or mortgage, (*Hattier* v. *Etinaud*, 2 Desaus. Eq. 570,) and when Peter was free from liability the property reverted. If it was a gift, it was made by a person largely indebted, in secret; the donor retaining possession and control of the property, not only treating it as his own, but averring and claiming that it was his own. It is void, therefore, under statute 13 Eliz. (*Twyne's Case*, 1 Smith, Lead. Cas. 33.)

There is another question not an issue in the pleadings which, however, has appeared in the testimony,—a claim for this fund on the part of W. M. Thomas as trustee for his wife and children. No exception was taken at the time to the introduction of this evidence, nor was any exception taken to the finding of the referee thereon. The counsel for the assignee now desires to file an exception to this finding, upon the ground that it was not an issue in the pleadings, and the order of reference embraced only such issues as the pleadings disclosed. Apart from the fact that no exception has been taken until the hearing, (see *Gaines* v. *New Orleans*, 1 Woods, 104,) it is clear that the real purpose of the state court in sending the fund here to be adjudicated in the bankrupt court was to ascertain the right of the assignee thereto. That court could adjudicate every question between the other parties; could, indeed, have adjudicated the question as between the assignee and other parties. But a high sense of courtesy, and a very proper regard for the comity between the courts, induced the venerable magistrate who signed the order to send into this jurisdiction the decision of questions with which he supposed it was more familiar than the state courts are. To appropriate this fund to the bankrupt estate we must hold that the assignee is entitled to it as against every one else; and when it appears in the examination upon the issues in the pleadings that others, and they infants, have a reasonable show of claim to the fund, the court is bound to take notice of and to inquire into it. The referee has with great propriety reported all the facts connected with this claim. On the 27th March, 1865, William M. Thomas executed a deed in his own handwriting throughout, reciting that he had received from his mother-in-law, Mrs. Thurston, $400 in cash and a negro slave, named Mary; that he had invested the

$400 in another slave, named Eliza, and had sold Mary for $6,000; that he had invested the $6,000 in certain private notes, fully set out; and that it had always been his intention and that of his mother-in-law that the property should be free from his marital rights as property of his wife. He declares that he holds the same in trust for his "said wife and her children, free from my debts or contracts, reserving to myself the power to collect and invest the same or dispose of it as may be proper, for her benefit, as her trustee, and I hereby relinquish all claim to the same on my individual account." The deed has a place for a witness, but is not witnessed. On the back of it is this indorsement by William M. Thomas, without date:

"Having used some of the papers, I put in their place the following note of Mrs. Mary Raymond, upon which a decree has been made in the court of equity for Greenville district, claim on estate of J. M. Turpin in commissioner's office, and on Pickett estate in same office."

As the first decree in the court of equity on the Raymond note bears date 22d January, 1868, this indorsement must have been made after that time. How long after does not appear. This paper was never recorded in any office, although, being a post-nuptial settlement, it should have been recorded as a marriage settlement. *Brock* v. *Bowman*, Rich. Cas. 185. This, as the law then stood, was in the office of the secretary of state and of the register of mesne conveyance of his county. 6 St. at Large, S. C. 213. Not being so recorded, it was void as to existing creditors and all parties not having actual notice of it, though good as against the maker. *Fowke* v. *Woodward*, Speer, Eq. 238. It appears in evidence that William M. Thomas, with one Thomas B. Thurston and others, were copartners in trade in a firm of Barksdale, Perry & Co., and that on 6th November, 1866, Thomas purchased the entire interest of Thurston in said firm, and at the same time entered into a covenant with him to warrant and defend him from the debts of said firm, and that he should not be liable for them. Perry, Barksdale & Co. were largely indebted. On 14th April, 1870, one William Hughes obtained judgment against them in Spartanburg county for $2,969.20; sent transcript to Greenville county, and levied on lands of Thurston under execution thereon. The proceeds of sale of these lands were applied to the judgment, and the remainder due thereon was paid by Ann B. Thurston, to whom Hughes assigned the judgment. Both T. B. Thurston and Ann B. Thurston have proved their claims in this court, which are in this record. They are still unsatisfied. The declaration of trust is, therefore, void, as well under the statute 13 Elizabeth as under the statute law of South Carolina, there not being a shadow of testimony that Thurston knew of its existence or contents.

It is contended that, as the deed is good against the maker, Thomas, it is good as against his assignee, especially as it was not made in fraud of the bankrupt act, or in contemplation of bankruptcy. No one but the creditor existing at the time is able to impeach it. When one *bona fide* transfers property in trust for his wife and children, and the transfer is invalid simply from want of proper registration or from a mistake as

to the extent of his means or of his indebtedness, thus presenting no element of fraud, the transfer, being good as against the maker, is good as against his assignee in bankruptcy. *Warren* v. *Moody*, 122 U. S. 137, 7 Sup. Ct. Rep. 1063; *Adams* v. *Collier*, 122 U. S. 389, 7 Sup. Ct. Rep. 1208. But where fraud is charged, and the charge is well founded, the assignee can impeach the deed. *Allen* v. *Massey*, 17 Wall. 353; *Platt* v. *Matthews*, 10 Fed. Rep. 282; *Pratt* v. *Curtis*, 2 Low. 87,—this last case cited and approved in *Warren* v. *Moody*, *supra*. Now, in this case fraud is charged by the plaintiff, and is denied by the defendant. The deed was made in secret, not even having a witness, although it calls for one on its face. The indorsement was equally secret, bearing also no date. William M. Thomas treated the subject-matter of the original deed as his own property. He gives that as a reason in his indorsement. He treats the Raymond note precisely as if it were his absolute property. He transfers it to one of his brothers to protect another, inducing both to believe that it was good security. So the trust-deed was a secret, even to his own family. He made this assignment six days after judgment was entered against him as one of Barksdale, Perry & Co., in Spartanburg. Notwithstanding the long and varied litigation in the *Raymond Case*, its frequent appearance in the court of South Carolina and in the supreme court of the United States, and the interference of the military authorities with its enforcement, we see no mention whatever of it in this long record until in 1875, in the collateral suit of *Glover* v. *Blythe*. As early as 20th July, 1871, in the suits in which he was the party plaintiff, and therefore interested in its prosecution, and Raymond a party defendant interested in its abatement and discontinuance, an order was entered, presumably by his attorneys, permitting his assignee in bankruptcy to carry on the suit. Yet no protest appears on the part of the trustee, or any notice that this note, thus placed under control of the assignee in bankruptcy, was no part of the bankrupt estate, but was really the property of his wife and children. Such secrecy on the part of the grantor, and the use of the property settled as his own by the settler are two of the badges of fraud against the statute 13 Elizabeth in *Twyne's Case*, 1 Smith, Lead. Cas. 33. It was made when he was largely indebted for the firm of Perry, Barksdale & Co., not only for his own share of its liabilities, but for the share of T B. Thurston, and was also indebted to other persons. This note and the other claims in the indorsement evidently did not constitute an inconsiderable share of his estate. He was unable to meet his existing obligations for the debts of Perry, Barksdale & Co., and other debts were not paid, and never have been paid. The indorsement by which the Raymond note was settled could not have been made sooner than the spring of 1868. In 1870 he felt that he must secure his brother against debts for Perry, Barksdale & Co. A very few days before that he had suffered judgment for a debt of that firm, and 10 months thereafter he went into bankruptcy, with assets from which thus far the assignee has realized nothing. The inducement stated in the deed is out of all proportion to the sum settled by the indorsement. He got from his mother-in-law $400 and a woman slave.

He invested the $400 in another slave, and sold the other for $6,000, evidently in Confederate money. For this he settles a claim which, scaled down, amounted to $3,265.62, and which, after the land was sold and proceeds applied to it, left, with accrued interest, $3,229.53, a specialty debt against a perfectly solvent estate. This attempt by the indorsement to settle the Raymond note to the trusts of the deed is null and void as to creditors. Nor is there any evidence of an adverse holding by the trustee, which can give currency to the statute of limitations as against the assignee. Not only was there no notice of the trust until 1875, but when it was disclosed W. M. Thomas claimed the note as his own property. The bankrupt cannot plead the statute against his assignee. Mrs. Thomas has departed this life. The children are not parties to this suit. This is not necessary. *Vetterlein* v. *Barnes*, 124 U. S. 172, 8 Sup. Ct. Rep. 441; *Avery* v. *Cleary*, 132 U. S. 604, 10 Sup. Ct. Rep. 220.

William M. Thomas claims counsel fee for his services in securing the fund. He was not bound to render these services. He conducted the case of *Thomas* v. *Raymond* in the state court by his attorneys, Messrs. Perry & Perry, then by Messrs. Earle & Blythe, and when they went out of the case managed it himself. He was in all the litigation over the Raymond estate,—the record shows at least three cases. He is entitled to reimbursement for money expended and to compensation for services rendered in protecting the claim represented by the Raymond note.

Let the case go back to Mr. Seabrook, who will inquire and report what services were rendered, and what sums were expended by William M. Thomas after the adjudication in bankruptcy in redeeming the pledge of the note of Mary Raymond and in the suits of *Thomas* v. *Raymond*, *Warren* v. *Raymond*, and all other suits growing out of the contest between the mortgagees of H. H. Raymond and the creditors of his mother, Mary H. Raymond, and the value of such services. When these are ascertained, they will be paid out of the fund, and the remainder will be paid over to A. Blythe, assignee.