## WARREN v. MOODY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE MIDDLE DISTRICT OF ALABAMA.

Submitted April 22, 1887. — Decided May 23, 1887.

K., owning property of the value of $91,400, and owing individually $3400 of
debts, and about $3000 more as a member of a firm, conveyed land in
Alabama, to his daughter, in 1866, as an advancement on her marriage.
In 1876, K. was adjudged a bankrupt. His assignee in bankruptcy sued
the daughter in equity, to set aside the deed of the land, alleging in the
bill that the deed, being voluntary, was void under the laws of Alabama.
No fraud as to creditors was alleged: *Held*, that the assignee did not
represent the prior creditors, because the land was not conveyed in fraud
of creditors, within the meaning of § 14 of the Bankruptcy Act of
March 2, 1867, c. 176, 14 Stat. 522, now §§ 5046 and 5047 of the Re-
vised Statutes.

THIS was a bill in equity, filed in the District Court of the
United States for the Middle District of Alabama, on the 25th
of July, 1878, by Frank S. Moody and Richard C. McLester, as
assignees in bankruptcy of Baugh, Kennedy & Co. and John
S. Kennedy, against John S. Kennedy and his wife, Mary
E. Kennedy, and Edward Warren and his wife, Vernon L.
Warren. The bill alleged, that, on the 7th of July, 1876, the
defendant John S. Kennedy, as one of the partners in the late
firm of Baugh, Kennedy & Co., and as an individual, was
adjudged a bankrupt by the said District Court, on a petition
filed by that firm and each of its individual members; that the
plaintiffs were appointed, on July 28, 1876, assignees in bank-
ruptcy of the estate, rights and credits of the firm, and of each
of its individual members, including the defendant Kennedy;
that they received the usual assignment from the register in
bankruptcy, on the 11th of August, 1876; that, on the 31st of
December, 1866, Kennedy and his wife were seized and
possessed of a tract of land in Sumter County, Alabama, con-
taining 1056 acres; that, on that day, without any other con-
sideration than that of natural love and affection, they under-
took to convey the land to their daughter, the defendant Ver-

non L. Warren, but the deed was not acknowledged by the grantors until the 7th of October, 1867, and was not recorded until the 29th of March, 1872; that, as the deed had no attesting witnesses, it did not become operative as a deed of conveyance, as against existing creditors, for any purpose, until the date of its recording, or at least until it was acknowledged; that none of the defendants have been in the actual possession of the land since the date of the deed; that, at the time the deed was executed, Kennedy owed six debts, which are specified in detail in the bill, and amount in the aggregate to $6442.62, four of them, amounting to $4371.92, having been proved in bankruptcy, two of those proved having been due to two minors, wards of Kennedy, named Harrison, and one of those not proved having been due to a Mrs. Herbert, and three of the debts having been due by the said firm, of which he was a member.

The bill alleged that the said deed, being wholly voluntary, was, under the laws of Alamaba, absolutely void, as against those debts and as against the plaintiffs, who, as such assignees, represented those debts for the purposes of this suit. The bill prayed that the deed might be declared null and void and be set aside and vacated, and that the land might be sold by the plaintiffs, and its proceeds be administered by them as part of the estate of Kennedy in bankruptcy.

The deed, a copy of which was annexed to the bill, set forth that it was made " in consideration of the love and affection we bear to our daughter, Vernon L. Warren, and the sum of ten dollars." It conveyed the land to her and to her heirs and assigns forever, and contained a convenant of warranty and this clause: " The foregoing conveyance is intended as an advancement to our said daughter."

The answer of Kennedy and his wife averred that love and affection for their daughter was part of the consideration for the conveyance, and that the sum of ten dollars was also paid as part of the consideration, as stated in the deed; that the defendant Warren and his wife were married on the 20th of December, 1866; that the deed was executed and delivered to the daughter on the day it bears date; that the daughter and

her husband took immediate and actual possession of the land; that the husband rented the land for the year beginning January 1, 1867; that he had had the sole control and management of the land, as agent and husband of his wife, paying taxes thereon, directing and superintending the repairs, and receiving the entire rent thereof for his wife, from the date of the deed to the day of making the answer, (April 21st, 1879,) and that Warren and his wife were still in the actual possession of the land. The answer averred, that all the debts of any moment which Kennedy owed at the date of the deed, on his own individual account, being the debts to the two minors, and the debt to Mrs. Herbert, amounted to nearly $3400; that the same debts were substantially all the debts he owed at the date of his bankruptcy, on his own private account; and that, as a member of the old firm of Baugh, Kennedy & Co., he owed, at the time of making the deed and at the date of his bankruptcy, jointly with his partners, debts amounting to about $3071.

The answer averred that the deed was not made with the intent to hinder, delay or defraud the creditors named in the bill, or any other creditors, or that it necessarily did so; that, at the time of making the conveyance, Kennedy and his wife were in prosperous circumstances, and possessed of ample means to pay all debts, and were able to withdraw the value of their donation to their daughter from their estate without the least hazard to their creditors; that they owed, in their individual capacity, at that time, very little money, the debts above named in the answer, amounting to nearly $3400, being their chief and almost their only individual debts; that at the time of making the deed, Kennedy owned, in his own right, free from all liens or incumbrances, real and personal property and choses in action, a schedule of which was annexed to the answer, amounting in value at that date to $91,400; that he was never sued for an individual debt, and never gave any incumbrances on his property, until some twelve months before his failure; and that he would long since have paid the three individual debts due to the minors and Mrs. Herbert, but the last-named debt was so fixed by will that Mrs. Her-

bert could only use the interest during her life, and, at her death, without heirs, she being childless, the property was to go back to other parties, and the two minors were under age until three or four years before the filing of the answer, and could not lawfully receive the money.

The answer of the defendants Warren and wife adopted, as their answer, the answer of Kennedy and his wife, and pleaded the facts set forth in the latter answer, as a bar to the plaintiff's suit. There was a replication to these answers, and three witnesses were examined on behalf of the plaintiffs. The only point of any materiality in their testimony was as to the value of the property in December, 1866, which one of them put at six dollars an acre, another at from eight to ten dollars an acre, and the third knew nothing about.

In June, 1880, the solicitors for the plaintiffs signed a stipulation, entitled in the suit, admitting "that the facts set forth in the answers were substantially true, except so far as controverted by the depositions and other evidence in the cause."

The case was brought to a hearing on the pleadings and the three depositions, the deed to Mrs. Warren, the stipulation, and the schedule to the answers of the defendants, and the District Court, on the 9th of July, 1880, made a decree, setting aside the deed and directing that the land covered by it be sold by the plaintiffs as assignees in bankruptcy, and that the net proceeds of the sale be held by the assignees subject to distribution among the creditors of the bankrupt under the orders and directions of the District Court, according to the respective rights and priorities of such creditors and of the defendants Warren and his wife. The decree also referred it to a master to ascertain and report the amounts due from Kennedy on the several demands set forth in the bill, and which should, up to the time of holding the reference, have been proved against the estate of Kennedy in bankruptcy. The defendants Warren and wife appealed from that decree to the Circuit Court, which in December, 1881, affirmed the decree of the District Court, from which latter decree Warren and his wife appealed to this court.

*Mr. John T. Morgan* for appellants.

*Mr. M. L. Woods* and *Mr. William S. Thorrington* for appellees.

This conveyance was voluntary, and without adequate consideration. The debt of the attacking creditor was a liability against the debtor when the deed was made. These two conditions coexisting, the deed is void under the laws of Alabama. *Cato* v. *Easley*, 2 Stewart (Ala.) 214; *Miller* v. *Thompson*, 3 Porter (Ala.) 196; *Moore* v. *Spence*, 6 Ala. 506; *Thomas* v. *De Graffenreid*, 17 Ala. 602; *Foote* v. *Cobb*, 18 Ala. 585; *Gannard* v. *Eslava*, 20 Ala. 732; *Stiles* v. *Lightfoot*, 26 Ala. 443; *McAnally* v. *O'Neal*, 56 Ala. 299; *Hubbard* v. *Allen*, 59 Ala. 283; *Anderson* v. *Anderson*, 64 Ala. 403. The case last cited contains a very full and clear exposition of the law of Alabama on this subject. These authorities leave no room for doubt as to the settled law of Alabama on this subject; and the law of Alabama governs in this case.

There are two reasons why this court will follow the Alabama decisions on this subject. The first is, that these decisions are a construction of a state statute, to wit: § 2124, Code of Alabama; and the Federal courts will adopt the construction given to a state statute by the highest court of the state. *Pratt* v. *Curtis*, 2 Lowell, 87; *S. C.* 6 Bank Reg., 139; *Thatcher* v. *Powell*, 6 Wheat. 119; *Polks' Lessee* v. *Wendall*, 9 Cranch, 87; *Elmendorf* v. *Taylor*, 10 Wheat. 152. In the next place the decisions of Alabama on this subject have become *a rule of property in that state*, and in such cases the Federal courts, sitting there, will apply the rule as though they were state courts. *Lloyd* v. *Fulton*, 91 U. S. 479, 485; *Christy* v. *Pridgeon*, 4 Wall. 196.

MR. JUSTICE BLATCHFORD, after stating the case as reported above, delivered the opinion of the court.

It will be noticed that the bill does not attack the deed on the ground of fraud. It does not allege that it was made with any intent to delay, hinder, or defraud the creditors named in the bill, or any other creditors of Kennedy. It does not allege that there are any other creditors than those

named in the bill, or any creditors who became such after the making of the deed. The sole ground on which it proceeds is, that the deed was a voluntary deed, and is void as against the persons who were creditors of Kennedy prior to the making of the deed. It claims that the plaintiffs, as assignees in bankruptcy, represent the debts of those creditors, for the purposes of the suit.

The alleged right of action of the plaintiffs is asserted under § 14 of the Bankruptcy Act of March 2, 186⁷, c. 176, 14 Stat. 522, which provides, that "all the property conveyed by the bankrupt in fraud of his creditors" "shall, in virtue of the adjudication of bankruptcy and the appointment of his assignee, be at once vested in such assignee, and he may sue for and recover the said estate, debts, and effects." This provision is also found in §§ 5046 and 5047 of the Revised Statutes.

The deed in question was a valid instrument between the grantors and the grantees. The stipulation on which the case was heard, containing an admission "that the facts set forth in the answers are substantially true, except so far as controverted by the depositions and other evidence in the cause," makes the allegations of fact contained in the answer of Kennedy and his wife evidence in the cause. When the deed was made, Kennedy was, as the answer alleges, in prosperous circumstances, and possessed of ample means to pay all debts, and was able to withdraw the value of the donation to his daughter from his estate without the least hazard to his creditors, and the amount of his individual debts was very small as compared with the amount of his property. The deed to the daughter being honest in fact and in intent, and being, on the evidence, a proper provision for her, as an advancement on the occasion of her marriage, and being valid as between her parents and herself, and no fraud in fact, or intent to commit a fraud, or to hinder or delay creditors, being alleged in the bill, the case is not one in which these plaintiffs can set aside the deed, as being a deed of "property conveyed by the bankrupt in fraud of his creditors," even though the conveyance may have been invalid, under the statute of Alabama, as

against the creditors named in the bill, because it was a voluntary conveyance. These creditors, whatever remedies they may have had to collect their debts, are not represented by the plaintiffs, as assignees in bankruptcy, for the purposes of this suit, on the facts developed.

The case of *Pratt* v. *Curtis*, 2 Lowell, 87, cited by the plaintiffs, was a case of two bills in equity by the assignee of a bankrupt to set aside conveyances of land made by the bankrupt, one being a voluntary deed of settlement for the benefit of his children, and the other being a like deed for the benefit of his wife. Each bill alleged that, at the time of the settlement, the bankrupt was indebted to persons who were still his creditors, and was embarrassed in his circumstances, and that the deed was made with intent to delay and defraud his creditors. On demurrer, the bill was sustained, on the view that the assignee in bankruptcy, and he only, had the right to impeach the deeds, in the interest of creditors. That decision, based on a case of intent to delay and defraud creditors, on the part of a person embarrassed in his circumstances, has no application to the present case.

*The decree of the Circuit Court is reversed, and the case is remanded to it, with a direction to dismiss the bill, with costs to the defendants in the Circuit Court and in the District Court.*