METROPOLITAN NAT. BANK *v.* ROGERS *et al.*

(*Circuit Court, W. D. Pennsylvania.* July 31, 1891.)

1. FRAUDULENT CONVEYANCE TO WIFE—EVIDENCE.

This suit to set aside a voluntary settlement by a husband upon his wife was brought by his assignees in bankruptcy, and later was prosecuted by one to whom the assignees conveyed *pendente lite.* The proofs examined, and conclusion reached that the transaction was free from fraud, and not impeachable by the assignees or their vendee.

2. SAME—LACHES.

The plaintiffs' sluggishness in pressing the suit, and their great delay in bringing the cause to final hearing, criticised unfavorably.

3. SAME—RIGHTS OF CREDITORS.

Where a voluntary conveyance of real estate by a husband to his wife and its subsequent improvement by him were without actual fraud, and there was no intention to delay or hinder the creditors of the husband, only his existing creditors had a right to assail the conveyance.

4. SAME—IMPROVEMENT OF PROPERTY CONVEYED.

Where, by a voluntary conveyance by a husband to his wife, she acquired a valid title to land, expenditures made *bona fide* by the husband more than a year afterwards in its improvement could not have the effect of changing the ownership in whole or in part, although 18 months later he was adjudged a bankrupt.

5. SAME.

Where such expenditures were made by the husband without fraudulent intent towards his creditors, and were innocently acquiesced in by the wife, there is no ground for fastening a charge on the land for the value of the improvements upon a bill filed by the husband's assignees in bankruptcy.

In Equity.

Bill by the Metropolitan National Bank against Mary Ann Rogers and others to set aside a conveyance of land as in fraud of the grantor's creditors.

*C. C. Dickey* and *James Bredin,* for complainant.

*William L. Chalfant,* for defendants.

ACHESON, J.    The purpose of this suit is to set aside as fraudulent as against creditors a deed of conveyance of real estate made by William Rogers and Thomas J. Burchfield to Mary Ann Rogers, (wife of William Rogers,) dated July 8, 1872, acknowledged by the grantors, respectively, on July 29 and August 2, 1872, and duly recorded May 10, 1873. This real estate consists of 10 acres of land situate in Armstrong county, Pa.    The original plaintiffs in the suit were the assignees in bankruptcy of the grantors.    The present plaintiff, the Metropolitan National Bank, acquired title *pendente lite* by deed from said assignees.

In looking into this record we are at once struck with the plaintiffs' sluggishness in prosecuting the suit, and their extraordinary delay in bringing the cause to a final hearing.    A brief recital of the proceedings will make this plain.    William Rogers and Thomas J. Burchfield, who had been copartners under the firm name of Rogers & Burchfield in the business of manufacturing sheet-iron and iron in other forms, upon their petition filed November 1, 1875, were adjudged bankrupts, and in the course of a few weeks their assignees were chosen and qualified.    Undoubtedly the assignees immediately after their appointment knew all

the facts connected with the title of Mrs. Rogers to the real estate here in dispute, yet their bill in this case was not filed until December 14, 1877, only six days before the bar of the statute of limitations (section 5057, Rev. St.) would have protected her effectually. The answer of Mrs. Rogers and her husband to the bill, which was under oath, and traversed all the material allegations upon which the plaintiffs' right to relief rested, was filed May 28, 1878. The plaintiffs filed their replication December 24, 1878, and then procured the appointment of an examiner. Here the case long rested. Without having taken any testimony, the assignees in bankruptcy, on June 20, 1879, exposed this real estate to public sale, and sold their title to the Metropolitan National Bank for $1,200. A conveyance, however, by the assignees to the bank was not made until May 31, 1881. The first active movement on the part of the plaintiffs in pushing the suit was made so late as July 14, 1883, when they proceeded to have the deposition of Thomas J. Burchfield taken. It was filed August 27, 1883. Not until January 7, 1886, did the Metropolitan National Bank take any step to intervene in the suit. On June 2, 1886, an order was made, allowing the bank to file a supplemental bill. On February 17, 1888, more than 10 years after the original bill was filed, the plaintiff bank formally closed its proofs in chief. The defendants commenced to take their proofs on May 7, 1888, and continued so doing from time to time. While thus engaged, the plaintiff bank on March 11, 1889, resumed the taking of testimony, calling before the examiner Thomas J. Burchfield, and re-examining him at length. His testimony thus taken, although upon the same matters, is more unfavorable to Mrs. Rogers than was his original deposition. So, too, the bank, at this stage of the case, recalled and re-examined their witness S. M. Jackson. The bank also here examined other witnesses. In some instances this evidence is styled "rebuttal," but in the main it was really evidence in chief. It is upon this testimony, thus introduced out of order, and taken nearly 12 years after the suit was brought, and more than 16 years after the transactions under investigation occurred, the bank now mainly relies to defeat Mrs. Rogers' title. No reason is assigned why the witnesses could not all have been examined at an early date after suit brought. The defendants resumed the taking of their proofs on March 25, and closed them on June 16, 1890. The testimony taken by the examiner was filed October 20, 1890, and the cause was brought on for final hearing in February, 1891. Now, it is true that it was in the power of Mrs. Rogers to speed the cause by enforcing the rules of court. But she was in possession of the land, and repose on her part was natural. The assignees in bankruptcy in the first instance, and then their vendee, the bank, were the actors, and the duty of promptitude was upon them. Their needless and unreasonable delay may not, indeed, conclude the bank; but a court of equity may well incline to look with some disfavor upon a claim so haltingly pursued, and now depending so much on the uncertain recollection of witnesses as to remote events.

The bill of complaint, after setting forth the proceedings in bankruptcy, and reciting the conveyance on or about July 8, 1872, of said real estate to Mrs. Rogers, alleges that the deed therefor was without consideration other than the recited nominal consideration of one dollar; that, subsequently to its date, a dwelling-house was erected and improvements made on the land at a cost of about $15,000; that this cost was paid out of the funds of Rogers & Burchfield, and on the books of the firm was charged to the individual account of William Rogers; that at the date of the deed, and at the time when the house was built and improvements made, the firm was extensively engaged in the manufacture and sale of iron; that this business was hazardous, and one in which the firm was necessarily obliged constantly to incur large debts and run great risks; that the firm "was largely indebted at the date of said deed, and so continued until on or about the 1st day of November, A. D. 1875, when it became insolvent;" that shortly before the adjudication in bankruptcy, and at a time when the said firm and William Rogers individually were hopelessly involved, he, (Rogers,) by a quitclaim deed dated May 31, 1875, and recorded July 27, 1875, conveyed to his wife his interest in said real estate without consideration therefor; and the bill then avers "that as your orators are advised, the said deeds are wholly void as to creditors, and in fraud of their rights; and by reason of said deeds your orators have been unable to sell said real estate at anything like its value, whereby the creditors of said bankrupts have been hindered and delayed in the collection of their just claims." This is the whole substance of the plaintiffs' case as set out in the bill. It is to be carefully noticed that the bill does not charge any actual fraud in the transactions complained of. The allegation (if it can be so called) just quoted, that "the said deeds are wholly void as to the creditors, and in fraud of their rights," is a mere legal conclusion, unwarranted by the facts stated; and even in making this suggestion of constructive fraud the assignees cautiously state that they are so "advised." There is no allegation in the bill that the deed of 1872 was made or the land improved with any intent to delay, hinder, or defraud creditors of the grantors, existing or future. Nor is it alleged that the firm of Rogers & Burchfield, or either of the individual members, was insolvent or embarrassed when the deed of 1872 was executed, or when the house was erected and the other improvements were made. All that the bill asserts is that at the date of that deed the firm was "largely indebted," and "so continued" until about November 1, 1875, "when it became insolvent." But this is entirely consistent with solvency in July, 1872. Neither does the allegation of continued indebtedness from July, 1872, until the insolvency and bankruptcy in November, 1875, imply that any debt which existed at the time of the conveyance of the land remained unpaid on November 1, 1875, and certainly the bill does not expressly so charge. True, it is averred that, when the quitclaim deed of 1875 was executed, "both said firm and William Rogers were hopelessly involved;" but it is quite clear that the quitclaim deed was a matter of no moment whatever. It was made merely to cure a supposed defect in Mrs. Rogers' title, arising from the fact that by the deed of

1872 Rogers conveyed directly to his wife, without the intervention of a trustee; but, undoubtedly, the earlier deed of the husband was effective, and passed to the wife a substantially good title. *Thompson* v. *Allen*, 103 Pa. St. 44; *Jones* v. *Clifton*, 101 U. S. 225. Therefore the title of Mrs. Rogers to the land in dispute is to be regarded as having vested in her at least as early as August 2, 1872, the date when the deed was perfected by the acknowledgment of Thomas J. Burchfield. If, then, we confine our attention to the bill of complaint alone, it may confidently be affirmed, upon the authority of *Warren* v. *Moody*, 122 U. S. 132, 7 Sup. Ct. Rep. 1063, and *Adams* v. *Collier*, 122 U. S. 382, 7 Sup. Ct. Rep. 1208, that no ground is thereby disclosed to sustain a decree against Mrs. Rogers. In the last-cited case (page 390, 122 U. S., and page 1211, 7 Sup. Ct. Rep.) the court says:

"If the grantor was insolvent when he made the conveyance of 1863, or if the lands so conveyed constituted more, in value, of his estate than he could rightfully withdraw from the reach of creditors and give to his children, in either case the assignee in bankruptcy—there being no fraud on the part of the grantor—has no standing to impeach the conveyance. The deed was good as between the grantor and his children; and, in the absence of fraud, could not be questioned by the assignee, who took only such rights as the bankrupt had. *Yeatman* v. *Savings Inst.*, 95 U. S. 764, 766; *Stewart* v. *Platt*, 101 U. S. 731, 738; *Hauselt* v. *Harrison*, 105 U. S. 401, 406; Rev. St. § 5046. It could only be avoided by creditors who were such at the date of the conveyance." Citing *Warren* v. *Moody*, *supra*.

Now the Metropolitan National Bank was not a creditor of Rogers & Burchfield, or of either partner, at the date of the conveyance to Mrs. Rogers, but first became such creditor in August, 1875; and the bank is clothed with such rights only as the assignees had under the bankrupt law to contest the validity of the deed to Mrs. Rogers. *Crawford* v. *Halsey*, 124 U. S. 648, 8 Sup. Ct. Rep. 641. Here, then, the case might be rested. But when we go outside of the bill of complaint, and consider the proofs, the substantial merits of the case are found to be with Mrs. Rogers. It appears that by the original articles of copartnership of Rogers & Burchfield, entered into August 18, 1866, William Rogers was to turn or to keep dressed to proper shape the rolls used in the manufacture of sheet-iron, and in consideration of that service he was to occupy, free of rent, one of the houses of the firm. In the year 1872 that arrangement was modified to the pecuniary advantage of the firm, Rogers agreeing to surrender the house to the firm, and, in lieu thereof, the firm agreeing to convey to him in fee 10 acres of farm land. Under this new agreement, and by request of Mr. Rogers, the conveyance of the 10 acres of land (the property in dispute) was made to his wife by the deed of July 8, 1872. The land was only of the value of $50 an acre, including underlying coal; but the coal was excepted out of the grant to Mrs. Rogers. On July 22, 1873, William Rogers entered into a contract with Dickey & Sons, builders, for the erection on the land of a house, the contractors to furnish all materials and labor, for the sum of $13,800, and to complete the work by April 1, 1874. The house was begun early in August, 1873, and was erected under that

contract. The ultimate cost, including some small incidental improvements, somewhat exceeded the contract price. The entire transaction was absolutely free from intentional fraud. There was no thought on the part of either William Rogers or Thomas J. Burchfield to delay, hinder, or defraud their creditors, or to withdraw any property from their reach. Insolvency was not apprehended by them, either at the date of the deed conveying the land or while the house was in course of erection. · From first to last all the parties to the transaction acted in perfect good faith. In his earlier deposition (taken on behalf of the plaintiff) Mr. Burchfield testified: "Our business in 1872 was largely in excess of the previous year; I should say 33 per cent. greater. Our profits were proportionally greater. There was what was called an 'iron boom' that year. We could not begin to fill our orders." Again he testified: "On the eve of the panic of 1873 we felt that we had a handsome surplus over our liabilities." The firm, indeed, had greatly prospered, and was a money-making concern. Apparently it had a very large surplus of assets over and above all its liabilities throughout the whole of the years 1873 and 1874. Upon a careful consideration of all the evidence, I am satisfied that the insolvency which overtook the firm in the fall of 1875 was caused by the "depreciation of values of property and losses of accounts," spoken of by Mr. Burchfield in his deposition,—the ultimate results of the financial panic which had swept over the country. But, as we have seen, Mrs. Rogers' title to the land was perfected on August 2, 1872, and, undoubtedly, at that time the firm of Rogers & Burchfield was not only solvent, but in a highly prosperous condition and possessed of ample means to discharge all its liabilities. The land conveyed to Mrs. Rogers was of the value of less than $500, and this was an insignificant settlement upon her in view of her husband's pecuniary circumstances. The conveyance—even if it is to be regarded as without consideration—did not tend in the slightest degree to imperil the rights of any of the firm creditors or the individual creditors of either partner. Again, when the contract for the house was made in July, 1873, and when the work thereon began, the financial panic was unforeseen. The business prospect of the firm continued good, and its surplus of assets was very large. The proposed investment in the improvement of the property was not disproportioned to the husband's means, nor inconsistent with the fairest dealing with his creditors, existing or future; and then, the work having been entered upon, there was a business necessity to carry the project through. Indeed, a contract obligation was upon Mr. Rogers, and he was not at liberty to recede. Moreover, in point of fact, neither the conveyance to Mrs. Rogers nor the subsequent expenditure in the improvement of the land operated to delay, hinder, or defraud then existing creditors. No account need here be taken of certain secured mortgage creditors. *Nippes' Appeal*, 75 Pa. St. 472. Undoubtedly the great bulk of all the other then existing debts was paid; and that, too, as the debts matured. If there is a solitary exception it is in the case of the Apollo Bank. Upon this subject the testimony of S. M. Jackson, the cashier

of the bank, is unsatisfactory and confusing. His second written exhibit, (No. 32,) produced in explanation and correction of his former one, purports to show the original notes of Rogers & Burchfield discounted by the Apollo Bank, of which the bank held renewal notes at the time the firm went into bankruptcy. The first of these original notes, which was for $2,000, is set down opposite the date "March 9, 1872." But Mr. Jackson distinctly testifies that the correct date is a year later,—March 9, 1873. It is, indeed, very hard to determine from his conflicting statements whether this was the date of the note or of its maturity. But in either case that note was discounted after the conveyance to Mrs. Rogers. The result, therefore, is that every debt existing at the date of the conveyance, not fully secured by mortgage, was actually paid. Mr. Jackson's exhibit No. 32 shows that his bank discounted another note of Rogers and Burchfield, for $3,000, on September 16, 1873, (which was after the building of the house had begun,) and a note for $1,000 on March 6, 1874, and he states that these notes, as also the $2,000 note already mentioned, were renewed every four months, and that the last renewals were held by the bank at the time of the failure. But, if we accept this as correct, still it is to be said that the original notes were lifted by new notes, and thus extinguished, (*Slaymaker* v. *Gundacker*, 10 Serg. & R. 82;) that this was in the regular course of a profitable discounting business carried on by the Apollo Bank with Rogers & Burchfield; that the renewals were the voluntary acts of the bank; and, finally, that beyond any question the notes would have been actually paid at maturity, had the bank desired it. Therefore I cannot see how the Apollo Bank can fairly be regarded, in this controversy between the Metropolitan National Bank and Mrs. Rogers, as a creditor of Rogers & Burchfield as of the time when the improvement on the land was in progress. Furthermore, Mrs. Rogers had recorded her deed within a reasonable time. There was no concealment. The improvement of her property was visible to all; and there was no fraud in intent or act on her part or on the part of her husband. Under all the circumstances, then, it seems to me that the transaction is not impeachable by the assignees in bankruptcy or by their vendee, the Metropolitan National Bank. *Warren* v. *Moody, supra; Adams* v. *Collier, supra; Crawford* v. *Halsey, supra; Moore* v. *Page*, 111 U. S. 117, 4 Sup. Ct. Rep. 388; *Harlan* v. *Maglaughlin*, 90 Pa. St. 293.

In conclusion, I observe that, Mrs. Rogers having acquired a valid title to the land in August, 1872, the expenditures made by her husband more than a year afterwards in its improvement could not have the effect of changing the ownership in whole or in part. *Conley* v. *Bentley*, 87 Pa. St. 45; *Herring* v. *Richards*, 3 Fed. Rep. 439. Nor is there any ground for fastening on the land a charge for such expenditures, even were such relief here sought, and the bill framed with a view to a decree of that nature. *Curry* v. *Lloyd*, 22 Fed. Rep. 258. There is not a particle of evidence to show any collusion between the husband and the wife. Neither entertained any evil purpose. The expenditures were honestly made by the husband and innocently acquiesced in by the

wife. In *Curry* v. *Lloyd,* · *supra,* a banker, when free from pecuniary embarrassment, and apparantly possessing ample means of his own, without fraudulent intent erected an expensive house upon his 'son's land, who, in good faith, permitted the gratuitous act of his father. The father suspended about the time the house was completed, in consequence of the financial panic of 1873, and was adjudged a bankrupt. Upon a bill filed by the assignees in bankruptcy it was held by the district court that the voluntary expenditure so made by the father was not a ground for charging the son or his land; and, on appeal, the circuit court (held by Judges BRADLEY and McKENNAN) affirmed the decision, and adopted the opinion of the district court. Upon the whole case, I am of the opinion that the plaintiff is not entitled to any equitable relief, and that the bill should be dismissed, with costs. Let such a decree be drawn.