METROPOLITAN NAT. BANK OF PITTSBURG v. ROGERS et al.

(Circuit Court of Appeals, Third Circuit. January 27, 1893.)

1. APPEAL—REVIEW—FINDINGS OF FACT.
　　Findings of fact by the court in a bill in equity must on appeal be considered prima facie correct, and will not be disturbed unless plain and manifest error be shown.

2. BANKRUPTCY—FRAUDULENT CONVEYANCES—ASSIGNEE'S TITLE.
　　Under Rev. St. § 5046, no title passed to an assignee in bankruptcy in respect to property theretofore conveyed by the bankrupt, unless there was fraud in such conveyance; and it was not sufficient that insolvency, not known at the time, was developed by subsequent events. 47 Fed. Rep. 148, affirmed.

3. SAME—EVIDENCE.
　　In July, 1872, a firm consisting of two partners conveyed to the wife of one of them a lot worth about $500, which conveyance was in lieu of a contract obligation on the part of the firm to furnish such partner a house free of rent. Subsequently such partner withdrew from the firm moneys some $13,600, and used it in building a house upon the lot. At the time of the conveyance the firm was apparently prosperous, was making money, and had a practical monopoly of the article dealt in; and, though its obligations were large, its assets, as shown by its books, were worth $250,000 in excess thereof. In November, 1875, the firm became insolvent, and filed a petition in bankruptcy; its failure being due to the panic of 1873, and the consequent shrinkage in the value of its property and bills receivable. *Held,* that on these facts actual fraud could not be inferred, especially when both partners testified to their good faith in the matter; and no title in the premises passed to the assignee in bankruptcy. 47 Fed. Rep. 148, followed.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania. Affirmed.

James Bredin and C. C. Dickey, for appellant.
Wm. L. Chalfant, (D. D. Bruce, on the brief,) for appellees.

Before DALLAS, Circuit Judge, and WALES and BUFFINGTON, District Judges.

BUFFINGTON, District Judge. This is an appeal by the Metropolitan National Bank of Pittsburgh from a decree of the circuit court for the western district of Pennsylvania (47 Fed. Rep. 148) dismissing a bill filed by Reuben Miller, Jr., et al., assignees in bankruptcy of William Rogers and Thomas J. Burchfield, to set aside a conveyance of 10 acres of land made by the bankrupts to Mary Ann Rogers, wife of said William Rogers.

The bill was filed 14th December, 1877, and alleged the plaintiffs were assignees in bankruptcy of said Rogers & Burchfield, who were the owners of the property in dispute; that by deed dated 8th July, 1872, they had conveyed the same to said Mary Ann Rogers; that no consideration, other than a nominal one, passed therefor; that a dwelling house and other improvements were soon built thereon at a cost of $15,000, and the same paid for by funds of Rogers & Burchfield charged to William Rogers; that at said times the firm was extensively engaged in the manufacture and sale of iron; "that said business was hazardous, and one in which the said firm was necessarily obliged to incur large debts and run great risks; that said firm was in fact largely indebted at the date of said deed, and so continued until on or about the 1st day of November, A. D. 1875, when it became insolvent," and filed a petition in bankruptcy; that on July 31, 1875, the bankrupts had executed a quitclaim deed to Mrs. Mary Ann Rogers for the same premises, for which no consideration passed; that the bankrupts had not returned said premises among their assets, but the same were retained and claimed by Mrs. Rogers. The bill then continues:

"That, as your orators are advised, the said deeds are wholly void as to creditors, and in fraud of their rights; and by reason of said deeds your orators have been unable to sell said real estate at anything like its value, whereby the creditors of said bankrupts have been hindered and delayed in the collection of their just claims."

The bill prayed for cancellation of the deeds, delivery of the property, and an accounting.

The answer of William and Mary Ann Rogers, filed 28th May, 1878, alleged the cost of the improvements was but $13,600. That a consideration had passed for said premises other than that stated in the deed, which arose thus: By the original articles of partnership between Rogers & Burchfield, dated 18th August, 1866, it was agreed that—

"Said Rogers shall be general manager at the mills, and shall superintend the business in Armstrong county, and shall devote his time and attention exclusively to his duties. He is also to turn the rolls, (but not the rolls in the lathe;) and in consideration thereof he shall occupy, free of rent, the house connected with the works, now in his occupancy, and the field adjoining."

That by a supplemental agreement dated August 18, 1873, it was stipulated:

"Said Rogers shall not hereafter occupy, free of rent, the house connected with the works lately in his occupancy. * * * In lieu of the privilege heretofore enjoyed by said Rogers, to occupy free of rent the house connected with the works, * * * the firm have agreed, and do hereby agree, to convey to the said Rogers, in fee, ten acres of ground off the back end of the David Leech farm, which the firm bought of Joseph G. Beale, which the said Rogers has already selected and staked off."

The answer further set forth that the business was not more hazardous than any other manufacturing one; that, while the firm was considerably indebted at the date of the deed, it had large credits, which, exclusive of real estate, were in excess of its liabilities; that both respondents believed the business was in a very flourishing

and prosperous condition; that the quitclaim deed was only given to correct a supposed defect in the title; that during 1870, 1871, 1872, and 1873 the profits of the firm averaged $40,000 a year; that the amount drawn from the firm to build the house, viz. six thousand and some hundred dollars for two years, was not unreasonable or improper; that the making of the deed to Mrs. Rogers, and the building of the house thereon, was a reasonable provision by her husband for her, and in keeping with his circumstances at the time.

A replication was filed December 24, 1878, and an examiner appointed. On June 20, 1879, the assignees sold at public sale their title to the premises in dispute, to the Metropolitan Bank, for $1,200, making conveyance thereof 31st May, 1881. On petition of bank filed January 7, 1886, it was allowed to intervene, and file a supplemental bill, in which it set forth its interest in the controversy by reason of its said purchase.

On hearing, the court was of opinion that the bill disclosed no ground to sustain a decree against Mrs. Rogers, and the case might rest on that ground, on the authority of Warren v. Moody, 122 U. S. 132, 7 Sup. Ct. Rep. 1063, and Adams v. Collier, 122 U. S. 382, 7 Sup. Ct. Rep. 1208. Without doing so, however, the court passed upon the testimony, and found the merits of the case to be with Mrs. Rogers; that the real consideration was as set forth in the answer, and that Rogers had received the 10 acres in consideration of the surrender of the house which he was to have rent free; that by his request the deed was made to Mrs. Rogers; that, even with the coal, (which was, however, excluded from the conveyance,) the value of the land was only $50 per acre; that the house was begun early in 1873 under a contract which required its completion by April 1, 1874. The court further found, (we quote the words of the learned judge:)

· "The entire transaction was entirely free from intentional fraud. There was no thought on the part of either William Rogers or Thomas J. Burchfield to delay, hinder, or defraud their creditors, or to withdraw any property from their reach. Insolvency was not apprehended by them, either at the date of the deed conveying the land, or while the house was in course of erection. From first to last, all parties to the transaction acted in perfect good faith. * * * The firm, indeed, had greatly prospered, and was a money-making concern. Apparently it had a very large surplus of assets over and above its liabilities throughout the whole of the years of 1873 and 1874. Upon a careful consideration of all the evidence, I am satisfied that the insolvency which overtook the firm in the fall of 1875 was caused by the 'depreciation of values of property and losses of accounts' spoken of by Mr. Burchfield in his deposition,—the ultimate results of the financial panic which had swept over the country. But, as we have seen, Mrs. Rogers' title to the land was perfected on August 2, 1872; and undoubtedly, at that time, the firm of Rogers & Burchfield was not only solvent, but in a highly prosperous condition, and possessed of ample means to discharge all its liabilities. The land conveyed to Mrs. Rogers was of the value of less than five hundred dollars, and this was an insignificant settlement upon her, in view of her husband's pecuniary circumstances. The conveyance, even if it is to be regarded as without consideration, did not tend in the slightest degree to imperil the rights of any of the firm's creditors, or the individual creditors of either partner. Again, when the contract for the house was made, in July, 1873, and when the work thereon began, the financial panic was unforeseen. The business prospect of the firm continued good, and its surplus of assets was very large. The proposed investment in the improvement of the property was not disproportioned to the husband's means, nor inconsistent with the fair-

est dealings with his creditors, existing or future; and then, the work having been entered upon, there was a business necessity to carry the project through. Indeed, a contract obligation was upon Mr. Rogers, and he was not at liberty to recede. Moreover, in point of fact, neither the conveyance to Mrs. Rogers, nor the subsequent expenditure in the improvement of the land, operated to delay, hinder, or defraud their existing creditors. * * * The result, therefore, is that every debt existing at the date of the conveyance, not fully secured by the mortgage, was actually paid. * * * Nor is there any ground for fastening on the land a charge for such expenditures, even were such relief here sought, and the bill framed with a view to a decree of that nature. There is not a particle of evidence to show any collusion between the husband and the wife. Neither entertained any evil purpose. The expenditures were honestly made by the husband, and innocently acquiesced in by the wife."

The court dismissed the bill, and its action is assigned for error. This must be either—First, in its finding of facts; or, secondly, in its application of the law to them.

Addressing ourselves to the first class, the finding by the court may be summarized: First. When the deed was executed, and the improvements made, the grantors were solvent. Second. The provision thereby made for Mrs. Rogers was a proper one, considering the financial condition of her husband, William Rogers. Third. All parties acted in good faith. There was no fraud in the transactions, and they did not hinder, delay, or defraud creditors.

It may, indeed, be questioned whether any of the assignments of error cover the findings of fact, and whether they are not, rather, to the application of the law to them. Assuming, however, the ninth assignment, viz. "the court erred in not finding actual fraud as against creditors on the part of Rogers & Burchfield and Mary Ann Rogers in the making of said conveyance, and in the making of the improvements placed upon the lands described in the said deed," raises the question, was there error in the findings? In settling this question, we must assume, prima facie, they are correct, and as such must be held, unless error, plain and manifest, be shown. When the law has charged a tribunal with the duty of examining the testimony and ascertaining the facts, its determination is, and must be, a finality, unless it be made to appear that such findings were contrary to the weight of the testimony. To say the proofs would permit a contrary finding, and ask the court to so find, will not avail. The facts having been ascertained by the tribunal whose duty it was to find them, they will not be set aside "unless clearly in conflict with the weight of the evidence upon which they were made." That such is the weight given to findings of facts in federal tribunals, Kimberly v. Arms, 129 U. S. 525, 9 Sup. Ct. Rep. 355; Camden v. Stuart, 144 U. S. 105, 12 Sup. Ct. Rep. 585; Crawford v. Neal, 144 U. S. 585, 12 Sup. Ct. Rep. 759; Tilghman v. Proctor, 125 U. S. 137, 8 Sup. Ct. Rep. 894; Callaghan v. Myers, 128 U. S. 619, 9 Sup. Ct. Rep. 177; and Furrer v. Ferris, 145 U. S. 132, 12 Sup. Ct. Rep. 821; and (in Pennsylvania) Logue's Appeal, 104 Pa. St. 141,—will show. Certainly equal, if not greater, weight should be given to such findings where a court, not delegating its power to a master, has itself weighed the testimony, and ascertained the facts, as is here the case. Tested by this standard, the findings of the court must stand. Neither the

printed brief nor the earnest arguments of counsel have shown us wherein the court below has erred. Where error is alleged in the findings of fact by a lower court, the assignment, to entitle it to consideration in the appellate court, should specifically and plainly point out the particular error alleged; but in this case we have examined the entire evidence with a view of arriving at a conclusion independent of the circuit court's action. No other conclusion, however, can be reached. The conveyance of land,—10 acres,—of a value of less than $500, was an insignificant diminution of the assets of a prosperous firm, and in no way tended to hinder, delay, or defraud its creditors. It was not made on the eve of threatened insolvency, or with the haste which often stamps dishonest transfers when insolvency is feared, nor was it without consideration. The evidence shows the firm was, by contract, bound to furnish, free of rent, to William Rogers, a house, the rent of which was estimated at from two to four hundred dollars per year. The value of the tract conveyed was less than two years' rent of the house, and the firm wished to use the latter as a company store. It was a financial gainer, instead of a loser, by the transaction.

Nor was the expenditure of the money by William Rogers in building the house upon it improper. It is easy, in view of the subsequent failure of the firm, and the large losses suffered by its creditors, to volunteer the opinion that the firm was always insolvent. But the status of the firm as it was at the time of the conveyance, with its surrounding conditions, is the better test of whether there was fraud in the mind of Rogers or his partner, Burchfield, in making the deed, or on the part of Mrs. Rogers in improving the property with her husband's money. An examination of the firm's books, as they were about the time these improvements were begun, (July 31, 1873,) shows, by the testimony of a disinterested accountant, that the firm was then worth more than a quarter of a million dollars over and above liabilities. Add to this the fact that it is shown to have been making large profits; had a virtual monopoly of the article it manufactured; that it had high commercial rating, and good credit with the banks; and that it was enabled to pass through two years of the strain of the panic. With these facts shown by the evidence, we cannot see how a court could find a fraudulent purpose in the mind of Burchfield or Rogers in making the deed; much less in the mind of Mrs. Rogers, who was the innocent recipient of a share of her husband's profits in a then supposed to be prosperous business. If there had been anything fraudulent in the transaction, it would come to light in the testimony of Burchfield, who was called by the appellant, and between whom and Rogers bad feeling resulted from the failure. His testimony, however, shows the deed was honestly made to Mrs. Rogers, and that he supposed the firm was in a prosperous condition. To fix fraud on Mrs. Rogers, from the evidence in this case, would be to give her an insight into the business of the concern, and the future, which the partners themselves, and the banks and persons with whom they dealt, did not possess. We are of opinion, from the evidence, with the court below, "that the insolvency which overtook the firm in the fall of 1875 was caused by the de-

preciation of values of property and losses of accounts, the ultimate result of the financial panic which had swept over the country."

There being, then, an absence of fraud in the transaction, there can be no doubt the assignees in bankruptcy, or their grantee, the Metropolitan National Bank, have no standing to attack the conveyance. To give such a right to an assignee in bankruptcy, fraud is a sine qua non. Section 5046, Rev. St., recites what rights pass to such assignees, viz.:

"All property conveyed by the bankrupt *in fraud* of his creditors, * * * together with the like right, title, power, and authority * * * to sue for and recover and defend the same as the bankrupt might have had if no assignment had been made, shall * * * be at once vested in such assignee."

This statute has been passed upon by the supreme court of the United States in Warren v. Moody, 122 U. S. 133, 7 Sup. Ct. Rep. 1063, and Adams v. Collier, 122 U. S. 382, 7 Sup. Ct. Rep. 1208, in both of which it was decided that fraud was a necessary element to give the assignee in bankruptcy a right of action, and that insolvency, of itself, or the fact that the property conveyed constituted more in value than the grantor could rightfully withdraw from the reach of creditors, would not, of themselves, vest such a right of action in the assignee. There must be fraud, for so the statute says. In other words, insolvency not then known, and only developed by subsequent events, or the fact that such events showed the property conveyed was an undue part of the grantor's estate, are not to be deemed fraud per se; and, as the statute bases the right of the assignee to recover upon the existence of fraud, such fraud must be alleged and proved.

Complaint is made that the appellant was turned out of court on the pleadings. This is not the case. The court expressly stated that, while the case might have rested on that ground, it would decide it upon the proofs. Such being the case, we are not called upon to pass on the pleadings; but, in omitting so to do, we would not be understood as intimating there was error in the court in saying the case might be rested on that point.

Being satisfied, from the evidence, the court arrived at proper conclusions of fact, and to those facts correctly applied the law, its decree must be affirmed, and this appeal dismissed, at the appellant's costs